# CASE NO. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*WHITEPAGES, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*HIYA, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*ACXIOM, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*COMMERCIAL REAL ESTATE EXCHANGE, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*CARCO GROUP, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*6SENSE INSIGHTS, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*SEARCH QUARRY, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*ENFORMION, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*COSTAR GROUP, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*ORACLE INTERNATIONAL CORPORATION, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*RED VIOLET, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*RE/MAX, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.*,

*Plaintiffs-Appellees*

*v.*

*EPSILON DATA MANAGEMENT, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.*,

*Plaintiffs-Appellees*

*v.*

*CLARITAS, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.*,

*Plaintiffs-Appellees*

*v.*

*DATA AXLE, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*REMINE INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*LUSHA SYSTEMS, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*TELTECH SYSTEMS, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*PEOPLECONNECT, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*CORELOGIC, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*BLACK KNIGHT TECHNOLOGIES, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*CHOREOGRAPH, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*TRANSUNION, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*EQUIFAX, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*SPOKEO, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*TELNYX, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*WILAND, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*ATDATA, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*OUTSIDE INTERACTIVE, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*VALASSIS COMMUNICATIONS, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*LEXISNEXIS RISK DATA MANAGEMENT, LLC, ET AL.*

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of New Jersey

## PETITION FOR PERMISSION TO APPEAL

VEDDER PRICE P.C.
Daniel C. Green
dgreen@vedderprice.com
Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com
1633 Broadway, 31st Floor
New York, New York 10019
T: 1 212 407 7700, F: 1 212 407 7799

Blaine C. Kimrey
bkimrey@vedderprice.com
Bryan K. Clark
bclark@vedderprice.com
Vedder Price P.C.
222 N. LaSalle Street
Chicago, IL 60601
T:1 312 609 7500, 1 312 407 5005

*Attorneys for defendants Whitepages, Inc. and Hiya, Inc.*

TROUTMAN PEPPER
HAMILTON SANDERS LLP
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400, 301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: Angelo.Stio@troutman.com
Melissa.Chuderewicz@
troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for defendants Acxiom LLC, AtData LLC, Carco Group, Inc., CoreLogic, Inc., Enformion, LLC, Enformion Holdco, Inc., Intellicorp Records, Inc., Remine Inc. and Red Violet, Inc.*

WILMER CUTLER PICKERING
HALE AND DOOR LLP
Alan Schoenfeld (New Jersey Bar
No. 285532018)
Marissa M. Wenzel
Todd Clayton
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
marissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

Christopher Davies
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Attorneys for defendant Choreograph,
LLC*

SILLS CUMMIS & GROSS P.C.
Joshua N. Howley
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

MAYER BROWN LLP
Andrew J. Pincus
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright
Jonathan D. Stahl
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*Attorneys for defendant Spokeo, Inc.*

GORDON, REES, SCULLY &
MANSUKHANI LLP
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq.
John Mills, Esq.
Bianca Evans, Esq.
1 Battery Park Plaza Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505
dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for defendants Claritas, LLC
and Lusha Systems, Inc.*

TRESSLER LLP
Timothy M. Jabbour (ID:TJ5611)
George Z. Twill (ID: 275292018)
Tressler LLP
163 Madison Avenue, Suite 404
Morristown, NJ 07960
973-848-2901
tjabbour@tresslerllp.com
gtwill@tresslerllp.com

Gregory C. Scaglione
Timothy Hutchinson
Koley Jessen P.C., L.L.O.
1125 S. 103rd St., Suite 800
Omaha, NE 68124
531-444-0644
Greg.Scaglione@koleyjessen.com
Tim.Hutchinson@koleyjessen.com

*Attorneys for defendant Data Axle,
Inc.*

BUCHANAN INGERSOLL &
ROONEY P.C.
Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19103

*Attorneys for defendants Trans Union,
LLC, Neustar, Inc., and TransUnion
Risk and Alternative Data Solutions,
Inc.*

FAEGRE DRINKER BIDDLE &
REATH LLP
Ross A. Lewin
105 College Road East
Princeton, New Jersey 08542
Kevin DeMaio
600 Campus Drive
Florham Park, New Jersey 07932
ross.lewin@faegredrinker.com
kevin.demaio@faegredrinker.com

Rachel B. Niewoehner
Katherine A.G. Sobiech
Croke Fairchild Duarte & Beres
191 N. Wacker Dr., Floor 31
Chicago, IL 60606
rniewoehner@crokefairchild.com
ksobiech@crokefairchild.com

*Attorneys for defendants Epsilon Data
Management, LLC, Conversant LLC,
and Citrus Ad International, Inc.*

McCARTER & ENGLISH, LLP
Scott S. Christie (New Jersey Bar
No. 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

Curtis B. Leitner
McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6800
Email: cleitner@mccarter.com

*Attorneys for defendants Black
Knight Technologies, LLC, Black
Knight, Inc., and Telnyx LLC*

KING & SPALDING LLP
Thomas J. Scrivo
1185 Avenue of the Americas
34th Floor
New York, NY 10036-2601
Tel: 212-556-2100
Fax: 212-556-2222
Email: tscrivo@kslaw.com

Zachary A. McEntyre
John C. Toro
Charles G. Spalding, Jr.
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: jtoro@kslaw.com
Email: cspalding@kslaw.com

*Attorneys for defendants Equifax, Inc. and Kount, Inc.*

DENTONS US LLP
Stephen M. Turner, Esq.
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Bety Javidzad, Esq.
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 243-6115
Email: bety.javidzad@dentons.com

Kristen C. Rodriguez, Esq.
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280

*Attorneys for defendants Commercial Real Estate Exchange, Inc. and Wiland, Inc.*

CARLTON FIELDS, P.A.
Michael D. Margulies (No. 030412008)
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ 07932
Telephone: (973) 828-2600
Email: mmargulies@carltonfields.com

*Attorneys for defendants Teltech Systems Inc. and Epic Applications, LLC*

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti
Whitney M Smith
Aaron J. Gold
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054

SAUL EWING LLP
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
One Riverfront Plaza
1037 Raymond Blvd.

Tel: (973) 503-5900

lmazzuchetti@kelleydrye.com

wsmith@kelleydrye.com

agold@kelleydrye.com

*Attorneys for defendants RE/MAX,*
*LLC*

Newark, NJ 07102

(973) 286-6700

wbaton@saul.com

sarah.sullivan@saul.com

alexander.callo@saul.com

Matthew D. Brown

Bethany C. Lobo

COOLEY LLP

3 Embarcadero Center, 20th Floor

San Francisco, CA 94111

Telephone: (415) 693-2000

E-mail: brownmd@cooley.com

E-mail: blobo@cooley.com

*Attorneys for defendants Valassis*
*Digital Corp. and Valassis*
*Communications, Inc.*

LOWENSTEIN SANDLER LLP

A. Matthew Boxer

Gavin J. Rooney

Rasmeet K. Chahil

LOWENSTEIN SANDLER LLP

One Lowenstein Drive

Roseland, New Jersey 07068

973.597.2500

mboxer@lowenstein.com

grooney@lowenstein.com

rchahil@lowenstein.com

*Attorneys for defendants LexisNexis*
*Risk Data Management, LLC and*
*RELX Inc.*

CLARK HILL PLC

Myriah V. Jaworski

Chirag H. Patel

Steven Richman

210 Carnegie Center, Suite 102

Princeton, NJ 08540

(609) 785-2911

mjaworski@clarkhill.com

cpatel@clarkhill.com

srichman@clarkhill.com

*Attorneys for defendants 6sense*
*Insights, Inc. and Search Quarry, LLC*

ORRICK, HERRINGTON &
SUTCLIFFE LLP
Camille Joanne Rosca
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
crosca@orrick.com

*Attorneys for defendant Outside
Interactive, Inc.*

LATHAM & WATKINS LLP
Robert C. Collins
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for defendants Oracle
International Corporation, Oracle
America, Incorporated, Oracle
Corporation, PeopleConnect, Inc.,
PeopleConnect Holdings, Inc., Intelius,
LLC, and PeopleConnect Intermediate,
LLC*

LATHAM & WATKINS LLP
Serrin Turner
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: serrin.turner@lw.com

*Attorneys for defendants CoStar
Group, Inc. and CoStar Realty
Information, Inc.*

# **TABLE OF CONTENTS**

**Page**

Introduction .............................................................................................1

Statutory Authority Granting Leave to Appeal.....................................3

Background ..............................................................................................6

Question Presented by This Petition ......................................................6

Relief Sought by This Petition................................................................7

Reasons for Granting Review .................................................................7

    A.    This Case Presents an Important Issue of First Impression .................8

    B.    The District Court Erred in Applying *Sprint* to the Diversity of Citizenship Analysis.........................................................9

    C.    The District Court Erred in Focusing on Section 1359 and *Kramer* ...........................................................................12

    D.    The District Court Should Have Applied the Multifactor Tests From *Attorneys Trust* and *Grassi* ........................................13

    E.    The Issue is Consequential, Likely to Recur, and Will Evade Review ....................................................................17

    F.    Plaintiffs Will Suffer No Prejudice from Granting Review.............17

Conclusion .............................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Attorneys Trust v. Videotape Computer Prod., Inc.*,
  93 F. 3d 593 (9th Cir. 1996) ..........................................................*passim*

*BP America, Inc. v. Oklahoma, ex rel. Edmondson*,
  613 F.3d 1029 (10th Cir. 2010) ....................................................7, 17

*BP P.L.C. v. Mayor & City Council of Baltimore*,
  593 U.S. 230, 141 S.Ct. 1532 (2021)....................................................4

*Branson Label, Inc. v. City of Branson, Mo.*,
  793 F. 3d 910 (8th Cir. 2015) ...............................................................8

*Brill v. Countrywide Home Loans, Inc.*,
  427 F.3d 446 (7th Cir. 2005) .................................................................4

*Coffey v. Freeport McMoran Copper & Gold*,
  581 F.3d 1240 (10th Cir. 2009) .............................................................5

*Grassi v. Ciba-Geigy, Ltd.*,
  894 F.2d 181 (5th Cir. 1990) .......................................................*passim*

*Kramer v. Caribbean Mills, Ltd.*,
  394 U.S. 823 (1969)..................................................................12, 13

*Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr., LLC*,
  749 F. 3d 1202 (10th Cir. 2014) ...........................................................8

*Nevada v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) .................................................................5

*Rowland v. Bissell Homecare, Inc.*,
  73 F.4th 177 (3d Cir. 2023) ...................................................................5

*Sprint Comm's Co., L.P. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008)......................................................................*passim*

*Waite v. City of Santa Cruz*,
    184 U.S. 302 (1902).................................................................10, 11

**Statutes**

28 U.S.C. § 1332 ...................................................................*passim*

28 U.S.C. § 1359 ...................................................................12, 13

28 U.S.C. § 1447 ...................................................................4, 5

28 U.S.C. § 1453 ...................................................................*passim*

N.J.S.A. 2C:20-31.1 ...............................................................3

N.J.S.A. 47-1A-1 ...................................................................3

N.J.S.A. 47:1B-2 ...................................................................3

N.J.S.A. 47:B-1 .....................................................................3

N.J.S.A. 56:8-166.1 ...............................................................3

**Other Authorities**

Fed. R. App. P. 5 ...................................................................1

Pursuant to 28 U.S.C. § 1453(c)(1) and Federal Rule of Appellate Procedure 5, Defendants-Petitioners ("Defendants")[1] seek permission to appeal a November 20, 2024 order of the United States District Court for the District of New Jersey ("Remand Order," attached as **Addendum 2**),[2] which remanded 39 actions removed from the Superior Court of New Jersey.

Certain Defendants that removed their cases under 28 U.S.C. § 1332(d)(11) ("CAFA Mass Action") have filed a separate Petition, seeking to appeal the Remand Order (the "CAFA Mass Action Petition"). The signatories to this Petition have removed based on, among other things, CAFA Mass Action and/or diversity jurisdiction under 28 U.S.C. § 1332(a).

## INTRODUCTION

The Court should grant this Petition to address the important issues raised in the CAFA Mass Action Petition and to resolve the unanswered question in this Circuit of what test a district court should apply in determining whether to disregard the citizenship of an assignee in the statutory diversity jurisdiction analysis. Other

---

[1] *See* **Addendum 1**.

[2] The Honorable Harvey Bartle III of the United States District Court for the Eastern District of Pennsylvania was designated and assigned to oversee the Removed Cases by United Stated Court of Appeals for the Third Circuit. Designation of District Judge to Hold a District Court within the Circuit, Civil Action No. 1:24-cv-04077-HB ("*Atlas v. Carco*"), ECF No. 9.

Circuits have laid out clear, largely overlapping multifactor tests where the assignee's citizenship might destroy diversity. *See Attorneys Trust v. Videotape Computer Prod., Inc*., 93 F. 3d 593, 599 (9th Cir. 1996); *Grassi v. Ciba-Geigy, Ltd*., 894 F.2d 181, 186 (5th Cir. 1990). But the District Court declined to apply these tests, instead applying the Supreme Court's constitutional standing decision in *Sprint Comm's Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269 (2008), to create an unprecedented two-part test to analyze statutory diversity jurisdiction. That unprecedented two-part test focused solely on (1) whether the assignee had standing and (2) collusive motive to destroy diversity jurisdiction.

Plaintiff Atlas Data Privacy Corporation ("Atlas") purports to be the assignee (Defendants dispute the enforceability of the assignments) of the claims of approximately 19,000 Covered Persons under New Jersey's Daniel's Law. Atlas alleges that Defendants failed to comply with requests to suppress home addresses and unlisted phone numbers of these Covered Persons within the 10-day time frame under the statute.

Defendants did not challenge whether Atlas had adequately pled standing — the question addressed in *Sprint*. Rather, Defendants assert that Atlas's citizenship (alleged to be New Jersey and Delaware) should not be considered in evaluating statutory diversity jurisdiction as to Defendants also formed in Delaware. No Supreme Court authority addresses this specific question, but both the Ninth and

2

Fifth Circuits have adopted multifactor tests to determine whether it is appropriate to disregard the citizenship of a non-diverse assignee when analyzing diversity jurisdiction. Here, it is clear that when these multi-factor tests are applied, Covered Persons — whose safety is the entire point of Daniel's Law[3] — are the real parties in interest and that Atlas's citizenship should be disregarded in assessing whether diversity jurisdiction exists.

Accordingly, in addition to accepting appeal of the issues set forth in the CAFA Mass Action Petition, the Court also should accept appeal of the District Court's diversity jurisdiction determination and ultimately find that *Attorneys Trust* and *Grassi* (not *Sprint*) are the appropriate lodestars for statutory diversity of citizenship involving a non-diverse assignee.

## STATUTORY AUTHORITY GRANTING LEAVE TO APPEAL

Defendants adopt the section of the CAFA Mass Action Petition setting forth the basis for appeal under Section 1453(c)(1) as if fully set forth herein. *See* CAFA Mass Action Petition, p. 2. For those reasons, the Court has authority to grant leave to appeal.

---

[3] Daniel's Law is codified at N.J.S.A. 2C:20-31.1 (criminal provision), N.J.S.A. 47-1A-1, 47:B-1, and 47:1B-2 (public agency provisions) and N.J.S.A. 56:8-166.1 (civil provision).

Furthermore, Section 1453(c)(1) states that "a court of appeals may accept an ***appeal from an <u>order</u>*** of a district court granting or denying a motion to remand a class action to the State court from which it was removed." (Emphasis added.) The statute does not limit the appeal to the CAFA analysis in the order, but rather acknowledges that when a petition is made under Section 1453(c)(1), the reasoning of the ***entire order*** is subject to appeal, including (in this case) the diversity analysis in the Remand Order.

In *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 141 S.Ct. 1532 (2021), the Supreme Court considered similar language in 28 U.S.C. § 1447(d). That provision provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that ***an order*** remanding a case to the State court from which it was removed pursuant to section 1442 and 1443 of this title shall be reviewable by appeal or otherwise." *Id.* at 1536-37 (emphasis added.) "By allowing appellate courts to review a district court's 'order,'" Congress has allowed review of any issue fairly encompassed within the order. *Id*. at 1540.

Although this issue has not been squarely evaluated in this Circuit, other circuits have held that Section 1453(c)(1) extends appellate jurisdiction to the entirety of an order on appeal. *See Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 451 (7th Cir. 2005) (holding that an appellate court is "free to consider any

4

potential error in the district court's decision, not just a mistake in application of the Class Action Fairness Act. When a statute authorizes interlocutory appellate review, it is the district court's entire decision that comes before the court for review"); *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1247 (10th Cir. 2009) (holding that "[t]here is no language [in Section 1453(c)(1)] limiting the court's consideration solely to the CAFA issues in the remand order"); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (holding that "because § 1453(c)(1) permits appellate review of remand orders 'notwithstanding section 1447(d),' we have the discretion to entertain the issue of whether another basis for federal jurisdiction exists that would justify the district court's denial of Nevada's motion").

In this Circuit, there is at least one case where diversity arguments were evaluated in the context of an appeal under Section 1453(c)(1). In *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177 (3d Cir. 2023), the appellant "petitioned for review of the remand orders pursuant to 28 U.S.C. § 1453(c), and we granted their petitions." *Id.* at 180. In that context, the court evaluated "traditional diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)" on appeal. *Id.* at 185.

Accordingly, the Court's appellate jurisdiction extends to the entire Remand Order that is subject to appeal under Section 1453(c)(1), which includes the District Court's analysis of removal pursuant to CAFA and pursuant to 28 U.S.C. §1332(a).

5

## BACKGROUND

Atlas and the individual plaintiffs filed the original wave of Daniel's Law suits in five New Jersey counties from February 6, 2024 to February 9, 2024. The first wave of removals occurred from March 19, 2024 to April 19, 2024. The bases for removals include, among other grounds, that Atlas's citizenship should be disregarded for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a) because Atlas, for these purposes, is not a real party in interest; rather, the Covered Persons are the real parties in interest. *Atlas v. Carco*, ECF No. 53 (the "Remand Opposition"), pp. 22-31. As such, Atlas's Delaware citizenship should not destroy diversity as to Defendants that also are Delaware citizens. *Id.* In moving to remand, Atlas and the individual plaintiffs claimed that Atlas is a real party in interest whose citizenship should be material to diversity jurisdiction. *Atlas v. Carco*, ECF No. 23 (the "Remand Motion"), pp. 13-20. The District Court ultimately concluded that diversity was lacking for Defendants with corporate registrations in Delaware because (1) Atlas is incorporated in Delaware and should be treated as a real party in interest in analyzing diversity jurisdiction, and (2) there was insufficient evidence of collusive motive to destroy diversity. *See* Remand Order, pp. 13-25.

## QUESTION PRESENTED BY THIS PETITION

Did the District Court err in applying *Sprint* (a constitutional Article III standing decision) instead of *Attorneys Trust* and *Grassi* (statutory diversity

jurisdiction decisions) to the question of whether the citizenship of a non-diverse assignee should be disregarded in analyzing diversity jurisdiction?

## RELIEF SOUGHT BY THIS PETITION

Petitioners respectfully request that the Court grant leave to appeal the Remand Order, including the diversity jurisdiction decision.

## REASONS FOR GRANTING REVIEW

Defendants do not repeat the arguments from the CAFA Mass Action Petition here, but rather incorporate them by reference as if fully set forth herein and reiterate that review should be granted on that basis. *See* CAFA Mass Action Petition, pp. 5-20.

In the absence of a separate standard for determining when the Circuit Court should review diversity when coupled with a CAFA jurisdictional appeal, the Court should apply the factors set forth in *BP America, Inc. v. Oklahoma, ex rel. Edmondson*, 613 F.3d 1029, 1034 (10th Cir. 2010): (1) "the presence of an important CAFA-related question," (2) whether the question is "unsettled," (3) whether the question appears to be either incorrectly decided or fairly debatable, (4) the question's importance to the case, (5) "whether the question is likely to evade effective review if left for consideration only after final judgment," (6) its likelihood of recurrence, (7) whether the decision is sufficiently final for review, and (8) whether "the probable harm to the applicant should an immediate appeal be

refused [outweighs] the probable harm to the other parties should an immediate appeal be entertained." Each of these factors supports granting this Petition.

## A. This Case Presents an Important Issue of First Impression.

The question of what test applies to diversity jurisdiction in the assignment context is one of first impression in this Circuit. While other Circuits have weighed in with respect to a non-diverse assignee, *see Attorneys Trust,* 93 F. 3d at 599 (9th Circuit); *Grassi,* 894 F.2d at 186 (5th Circuit),[4] the absence of a clear governing standard in the Third Circuit has already caused the parties to expend significant resources litigating this matter, only to have the District Court create its own test never utilized by any other courts. Without clarification, there likely will be ongoing confusion among the lower courts in this Circuit on this issue.

This issue is of particular importance in the context of CAFA. The Third Circuit has yet to squarely address the propriety of exercising its discretion to review non-CAFA removal grounds in connection with appeals under Section 1453. Granting leave to appeal the diversity jurisdiction issue would give the Court the opportunity to clarify that issue in this Circuit.

---

[4] *Attorneys Trust* and *Grassi* involve efforts to avoid federal jurisdiction, but other Circuit Courts have held that similar multifactor tests are appropriate in the context of assignments being used to **create** federal jurisdiction. *See Branson Label, Inc. v. City of Branson, Mo.,* 793 F. 3d 910, 916-17 and n.5 (8th Cir. 2015); *Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr., LLC,* 749 F. 3d 1202, 1205-6 (10th Cir. 2014).

**B.**    **The District Court Erred in Applying *Sprint* to the Diversity of Citizenship Analysis.**

The District Court created the following two-part test: (1) Does the assignee have Article III standing under *Sprint*? and (2) Is there evidence of collusion between the assignee and the assignor to avoid federal jurisdiction?  *See* Remand Order, pp. 13-25.  After determining that the answer to the first question was yes and the answer to the second question was no, the District Court concluded that the assignee's citizenship should be considered in the diversity analysis.  *Id.*  The District Court's reasoning is flawed and finds no support in existing case law on whether an assignee's citizenship should be disregarded in assessing diversity jurisdiction.

As an initial matter, the District Court erred in building its diversity of citizenship test from *Sprint*, a Supreme Court case that had nothing to do with statutory diversity jurisdiction or the question of real party in interest for the purposes of evaluating diversity.  In *Sprint*, the Supreme Court evaluated whether the plaintiff assignees had ***Article III standing*** to assert claims in federal court.  554 U.S. at 285.  The Court ultimately determined that the assignees had standing, *id.*, but did so without reference to federal subject matter jurisdiction based on diversity jurisdiction — indeed, 28 U.S.C. § 1332 is never mentioned in the *Sprint* opinion.

Accordingly, far from being dispositive, *Sprint* is irrelevant to statutory diversity jurisdiction.[5]

The District Court attempted to build a bridge between the Article III constitutional standing decision in *Sprint* and the federal statutory diversity analysis under 28 U.S.C. § 1332(a) in this case by asserting that the Supreme Court in *Sprint* "relied on *Waite v. City of Santa Cruz*, 184 U.S. 302 (1902), one of its own precedents and a diversity case." Remand Order, pp. 16-17. But the mere fact that *Waite* — a 122-year-old opinion — was alleged to be a diversity case does not make the Article III discussion in *Sprint* relevant to the diversity jurisdiction analysis in this case. The *Sprint* court merely relied on *Waite* for the proposition (irrelevant here) that an assignee historically had ***Article III standing*** to bring in its own name claims in federal court. *Sprint*, 554 U.S. at 283. In *Waite*, the Supreme Court held that while an assignee had standing to sue, the lower court lacked diversity jurisdiction because the amount-in-controversy requirement had not been satisfied. 184 U.S. at 328-29. This is completely separate from the question of whether it is proper to consider the citizenship of the assignee for diversity purposes under 28

---

[5] Notably, although the District Court claims in the Remand Order that "plaintiffs rely on the Supreme Court's decision in *Sprint*" (Remand Order, p. 15), Plaintiffs actually mentioned *Sprint* only once in their opening brief, *see Atlas v. Carco*, ECF No. 23-1, p. 15, and not at all in their reply. *See generally Atlas v. Carco*, ECF No. 68.

U.S.C. § 1332(a). Nevertheless, while *Waite* did not consider that question, in holding that an assignee for collection purposes, like Atlas here, could not aggregate individual amounts in controversy of numerous assignors to establish diversity jurisdiction, *Waite* demonstrates a long history of case law in which courts must consider the jurisdictional relevance of each individual assignor even when a single mass assignee brings a legal action in its own name.[6] If anything, therefore, *Waite* supports Defendants' argument that, for jurisdictional purposes, the individual assignors' citizenship should govern here.

Simply put, there was no justification for the District Court to make Article III standing under *Sprint* a threshold inquiry in its test for statutory diversity jurisdiction, particularly given the squarely-on-point diversity jurisdictional decisions in *Attorneys Trust* and *Grassi*. The District Court erred in adopting *Sprint* as the lodestar on statutory diversity jurisdiction.

---

[6] *See* CAFA Mass Action Petition, pp. 9-11. This Petition and the CAFA Mass Action Petition are in accord that the Supreme Court's acknowledgment of the functional equivalence of mass assignment and mass joinder reflected in *Waite* and *Sprint* **supports** CAFA jurisdiction. Both this Petition and the CAFA Mass Action Petition are also in accord in that, as to the distinct question of citizenship for purposes of 28 U.S.C. § 1332(a) diversity jurisdiction, ***neither*** *Waite* nor *Sprint* has an ***applicable holding***.

**C.    The District Court Erred in Focusing on Section 1359 and *Kramer*.**

Having made Article III standing a proxy for whether it is appropriate to consider an assignee's citizenship in the statutory diversity analysis, the District Court then concluded that the citizenship of an assignee with Article III standing should be disregarded only if there was "collusion."  To that end, the District Court relied on 28 U.S.C. § 1359 (which addresses collusive joinder to ***invoke*** jurisdiction) and *Kramer v. Caribbean Mills, Ltd*., 394 U.S. 823 (1969), a case interpreting Section 1359.

Section 1359 ***does not*** address a situation where a party uses an assignment to ***avoid*** federal jurisdiction.   Accordingly, Section 1359 is largely irrelevant. Likewise, in *Kramer*, the collusive assignment was made to invoke jurisdiction, not avoid it.  394 U.S. at 827-28.  Although the District Court acknowledged that the situation here is "the reverse of what the Supreme Court dealt with in *Kramer*" (Remand Order, p. 20), the Court nonetheless applied the *Kramer* standard to this factually and procedurally distinct case.

Notably, even if the *Kramer* standard applies here (it shouldn't), the District Court's ruling failed to track with *Kramer* in key respects.  First, *Kramer* made clear that complete assignments are those "where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter."  394 U.S. at 828.  Yet

despite recognizing that the assignors here (i.e. the Covered Persons) retain an interest in the subject matter in the form of 65 percent of any recovery (Remand Motion, p. 12), the District Court claimed that "these assignments are absolute and Atlas succeeds absolutely to the rights of the covered persons to bring suit." Remand Order, p. 34.    Second, although *Kramer* specifically calls out the fact that the assignee filed his complaint "soon" after the assignment, 394 U.S. at 824, the District Court summarily dismissed the idea that "the short timeframe between the assignment of claims and the filing of the lawsuits" could be problematic.  Remand Order, p. 24.

The District Court erred in applying *Kramer* and Section 1359.

### D.    The District Court Should Have Applied the Multifactor Tests From *Attorneys Trust* and *Grassi*.

The District Court erred in failing to follow the persuasive reasoning of directly-on-point cases from the Ninth and Fifth Circuits.  The District Court accepted Plaintiffs' invitation to focus almost exclusively on collusive motive (Remand Order, p. 19), but federal courts examining diversity jurisdiction look at "all of the facts and circumstances." *Attorneys Trust*, 93 F.3d at 600.  As the Ninth Circuit recognized, "There is no reason to give motive controlling weight in every case" because "[t]he objective fact of who really is the party in interest is the most important thing to be determined." *Id.* at 596.

In analyzing all facts and circumstances, including the substantive characteristics of an assignment, courts consider a number of non-exclusive factors to determine the real party in interest whose citizenship should be considered. The Fifth Circuit's decision in *Grassi* identified six features of the assignment that are relevant to determining diversity jurisdiction: (i) the comparative size of the interest assigned, (ii) whether the assignee held any interest in the litigation before the assignment, (iii) whether the assignor and assignee are represented by the same attorneys, (iv) the timing of the assignment and whether it occurred shortly before the litigation commenced, (v) whether the assignment represents what is essentially a contingent fee arrangement for collection work, and (vi) whether there is a strong likelihood of prejudice against the defendant. 894 F.2d at 186. Although *Grassi* found that, regarding the specific plaintiffs-assignors in question, their "overriding motive" was to avoid federal jurisdiction, *id.*, the court did not hold (or otherwise state) that an assignor's subjective motivation is the ***sole*** criterion for determining the existence of diversity jurisdiction. Instead, *Grassi* considered all the facts and circumstances, as part of a multifactor analysis, supporting the lower court's finding that it was "improper" to consider the assignment for purposes of diversity jurisdiction. *Id.*

Following *Grassi*, the Ninth Circuit used a similar multifactor approach to determine whether an assignee's citizenship should be disregarded for purposes of

determining diversity jurisdiction. *See Attorneys Trust*, 93 F.3d at 593. The court identified as relevant to assessing diversity jurisdiction: (i) whether the assignee had a prior interest in the claim, (ii) whether the assignment was timed to coincide with commencement of litigation, (iii) whether any consideration given by the assignee, (iv) whether the assignment partial or complete, and (v) whether the parties were represented by the same counsel. *Id*. at 599. The Ninth Circuit observed that every single case it could find involving "an assignment for collection (however framed or disguised)" revealed the assignors, not the collector-assignees, to be the real parties in interest. *Id*. at 597. And again, the Ninth Circuit noted that "[w]hile the courts are interested in motive because it can shed a great deal of light on otherwise ambiguous circumstances [,] the main focus is usually upon the reality of the transaction itself." *Id.*

The District Court should have applied the same multifactor analysis to the diversity jurisdiction assessment here but didn't. Instead, the District Court briefly described the findings in *Grassi*, but didn't apply the factors, and incorrectly focused almost exclusively on the subjective motivation for the assignment. Remand Order, p. 21. And the District Court summarily dispatched with *Attorneys Trust* in a footnote, saying it involved "unusual" circumstances and "predates *Sprint*." Remand Order, n. 7. But as explained above, *see* pp. 9-11, *supra*, *Sprint* addressed an assignee's Article III standing — not an assignee's status as a real party in interest

15

in the context of statutory diversity jurisdiction — and did not otherwise alter the holdings of *Attorneys Trust* or *Grassi*.

Moreover, the multifactor tests in *Attorneys Trust* and *Grassi* appeal to common sense because they are designed to determine which entities' interests will be driving the litigation. Whether before the District Court or in New Jersey state court, Defendants will challenge the validity of the assignments, and it will be the assignors (i.e. Covered Persons), not Atlas, who have much of the information relevant to that inquiry. Similarly, some Defendants will contend that some or all of these claims are subject to arbitration because of agreements between the assignors and the Defendants. Again, it will be the assignors, not Atlas, who will have to fight this battle. And if there is ever an injunction entered in these cases, it will benefit the assignors, not Atlas. Atlas is nothing more than an assignee for collection, and the District Court failed to properly analyze the *Attorneys Trust* and *Grassi* factors.

And this Court need not wade into that factual thicket on appeal. Defendants are cognizant of the 60-day limit imposed by Section 1453(c)(2). This Petition asks only for leave to appeal so the Court can determine as a matter of law whether the multifactor tests set forth in *Attorneys Trust* and *Grassi* also should govern in the Third Circuit. Thereafter, the Court can simply remand this case to the District Court with instructions to apply the multi-factor tests (if this Court determines they should in fact apply in the Third Circuit as they do in the Ninth and Fifth Circuits).

**E.     The Issue is Consequential, Likely to Recur, and Will Evade Review.**

The Remand Order has the effect of depriving Defendants of their statutory right to litigate in federal court.  The loss of that right is undeniably "consequential to [this] . . . particular case."  *BP Am.*, 613 F.3d at 1034.  In light of the District Court's ruling, plaintiffs who wish to avoid federal court jurisdiction likely will now attempt to assign their claims to companies with citizenship that will destroy diversity.  Additionally, if the Petition is denied, the Remand Order "would evade effective review."  Without an appeal to review the Remand Order, these actions will proceed in multiple New Jersey state courts, and the question of federal court jurisdiction will become moot.

**F.     Plaintiffs Will Suffer No Prejudice from Granting Review.**

Plaintiffs will suffer no prejudice if the Petition is granted.  Approximately 36 cases where diversity jurisdiction is not contested will remain in federal court before the District Court regardless of the outcome here.  Given the short timeframe to decide this appeal under Section 1453(c)(2), no meaningful delay to the cases will occur.  Further, Plaintiffs themselves have acknowledged that they "have no preference between federal court or state court," would "readily accept [the federal court's] jurisdiction over" the actions, and "welcome the opportunity to litigate" their claims in an "efficient[]", "coordinate[d]" manner "before" Judge Bartle, who

17

this Circuit chose to oversee all related cases. *See, e.g.*, Remand Motion, pp. 15-16, 25.

In stark contrast, Defendants face irreparable harm if their statutory right to federal jurisdiction is denied without review. *See* 28 U.S.C. § 1453(c)(2) (providing for expedited review). Furthermore, remanding these cases across several counties in New Jersey likely will result in waste of judicial resources and expenses, as well as inconsistent procedural and substantive rulings in less-coordinated actions.

## CONCLUSION

For the foregoing reasons, the Court should grant the Petition for Permission to Appeal.

Dated: December 2, 2024            **VEDDER PRICE P.C.**

/s/ *Daniel C. Green*
Daniel C. Green
dgreen@vedderprice.com
Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

Blaine C. Kimrey
bkimrey@vedderprice.com
Bryan K. Clark
bclark@vedderprice.com
Vedder Price P.C.
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 407 5005

*Attorneys for defendants Whitepages,*
*Inc. and Hiya, Inc.*

Dated: December 2, 2024

**TROUTMAN PEPPER**
**HAMILTON SANDERS LLP**

/s/ *Angelo A. Stio*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400, 301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for defendants Acxiom LLC,*
*AtData LLC, Carco Group, Inc.,*
*CoreLogic, Inc., Enformion, LLC,*
*Enformion Holdco, Inc., Intellicorp*
*Records, Inc., Remine Inc. and Red*
*Violet, Inc.*

Dated: December 2, 2024

**DENTONS US LLP**

/s/ *Stephen M. Turner*
Stephen M. Turner, Esq.
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Bety Javidzad, Esq.
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 243-6115
Email: bety.javidzad@dentons.com

Kristen C. Rodriguez, Esq.
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280

*Attorneys for defendants Commercial*
*Real Estate Exchange, Inc. and*
*Wiland, Inc.*

Dated: December 2, 2024

**CLARK HILL PLC**

/s/ *Myriah V. Jaworski*
Myriah V. Jaworski
Chirag H. Patel
Steven Richman
210 Carnegie Center, Suite 102
Princeton, NJ 08540
(609) 785-2911
mjaworski@clarkhill.com
cpatel@clarkhill.com
srichman@clarkhill.com

*Attorneys for defendants 6sense
Insights, Inc. and Search Quarry,
LLC*

Dated: December 2, 2024

**KELLEY DRYE & WARREN LLP**

/s/ *Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti
Whitney M Smith
Aaron J. Gold
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Tel: (973) 503-5900
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

*Attorneys for defendants RE/MAX,
LLC*

Dated: December 2, 2024

**FAEGRE DRINKER BIDDLE &
REATH LLP**

/s/ *Ross A. Lewin*
Ross A. Lewin
Faegre Drinker Biddle & Reath LLP
105 College Road East
Princeton, New Jersey 08542
Kevin DeMaio
600 Campus Drive
Florham Park, New Jersey 07932
ross.lewin@faegredrinker.com
kevin.demaio@faegredrinker.com

Rachel B. Niewoehner
Katherine A.G. Sobiech
Croke Fairchild Duarte & Beres
191 N. Wacker Dr., Floor 31
Chicago, IL 60606
rniewoehner@crokefairchild.com
ksobiech@crokefairchild.com

*Attorneys for defendants Epsilon Data
Management, LLC, Conversant LLC,
and Citrus Ad International, Inc.*

Dated: December 2, 2024

**GORDON, REES, SCULLY &
MANSUKHANI LLP**

/s/ *Douglas Motzenbecker*
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq.
John Mills, Esq.
Bianca Evans, Esq.
1 Battery Park Plaza Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505

dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for defendants Claritas and
Lusha Systems, Inc.*

Dated: December 2, 2024                    **CARLTON FIELDS, P.A.**

/s/ *Michael D. Margulies*
Michael D. Margulies (No.
030412008)
180 Park Avenue, Suite 106
Florham Park, NJ 07932
Telephone: (973) 828-2600
Email:
mmargulies@carltonfields.com

*Attorneys for defendants Teltech
Systems Inc. and Epic Applications,
LLC*

Dated: December 2, 2024                    **TRESSLER LLP**

/s/ *Timothy M.. Jabbour*
Timothy M. Jabbour (ID:TJ5611)
George Z. Twill (ID: 275292018)
163 Madison Avenue, Suite 404
Morristown, NJ 07960
973-848-2901
tjabbour@tresslerllp.com
gtwill@tresslerllp.com

Gregory C. Scaglione
Timothy Hutchinson
Koley Jessen P.C., L.L.O.
1125 S. 103rd St., Suite 800
Omaha, NE 68124

531-444-0644
Greg.Scaglione@koleyjessen.com
Tim.Hutchinson@koleyjessen.com

*Attorneys for defendant Data Axle, Inc.*

Dated: December 2, 2024

**McCARTER & ENGLISH, LLP**

/s/ *Scott S. Christie*
Scott S. Christie (New Jersey Bar No. 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

Curtis B. Leitner
McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6800
Email: cleitner@mccarter.com

*Attorneys for defendants Black Knight Technologies, LLC, Black Knight, Inc., and Telnyx LLC*

Dated: December 2, 2024

**WILMER CUTLER PICKERING HALE AND DOOR LLP**

/s/ *Alan Schoenfeld*

Alan Schoenfeld (New Jersey Bar No. 285532018)
Marissa M. Wenzel
Todd Clayton
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
arissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

Christopher Davies
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Attorneys for defendant Choreograph, LLC*

Dated: December 2, 2024

**BUCHANAN INGERSOLL & ROONEY P.C.**

/s/ *Samantha L. Southall*

Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19103

*Attorneys for defendants Trans Union, LLC, Neustar, Inc., and TransUnion Risk and Alternative Data Solutions, Inc.*

Dated: December 2, 2024

**KING & SPALDING LLP**

/s/ *Thomas J. Scrivo*

Thomas J. Scrivo
1185 Avenue of the Americas
34th Floor
New York, NY 10036-2601
Tel: 212-556-2100
Fax: 212-556-2222
Email: tscrivo@kslaw.com

Zachary A. McEntyre
John C. Toro
Charles G. Spalding, Jr.
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: jtoro@kslaw.com
Email: cspalding@kslaw.com

*Attorneys for defendants Equifax, Inc. and Kount, Inc.*

Dated: December 2, 2024                    **SILLS CUMMIS & GROSS P.C.**

*/s/ Joshua N. Howley*

Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

Andrew J. Pincus
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright
Jonathan D. Stahl
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*Attorneys for defendant Spokeo, Inc.*

Dated: December 2, 2024

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

*/s/ Camille Joanne Rosca*

Camille Joanne Rosca
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
crosca@orrick.com

*Attorneys for defendant Outside Interactive, Inc.*

Dated: December 2, 2024

**SAUL EWING LLP**

*/s/ William C. Baton*

William C. Baton
Sarah A. Sullivan
Alexander L. Callo
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com
alexander.callo@saul.com

Matthew D. Brown
Bethany C. Lobo
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

*Attorneys for defendants Valassis Digital Corp. and Valassis Communications, Inc.*

Dated: December 2, 2024

**LOWENSTEIN SANDLER LLP**

<u>/s/ *A. Matthew Boxer*</u>
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
mboxer@lowenstein.com
grooney@lowenstein.com
rchahil@lowenstein.com

*Attorneys for defendants LexisNexis Risk Data Management, LLC and RELX Inc.*

Dated: December 2, 2024

**LATHAM & WATKINS LLP**

<u>/s/ *Serrin Turner*</u>
Serrin Turner
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: serrin.turner@lw.com

*Attorneys for defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

Dated: December 2, 2024

**LATHAM & WATKINS LLP**

/s/ *Robert C. Collins*
Robert C. Collins
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for defendants Oracle
International Corporation, Oracle
America, Incorporated, Oracle
Corporation, PeopleConnect, Inc.,
PeopleConnect Holdings, Inc.,
Intelius, LLC, and PeopleConnect
Intermediate, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the type-volume limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted under the Federal Rules, this document contains 4,062 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. I certify pursuant to Third Circuit Local Appellate Rules 28.3(d) and 46.1(e) that I am a member of good standing of the Bar.

4. I certify pursuant to Third Circuit Local Appellate Rule 31.1(c) that the text of the brief filed electronically is identical to the text in the paper copies of the brief, and a virus detection program, Microsoft Defender Antivirus was run on the electronic file containing this motion and no virus was detected.

*/s/ Daniel C. Green*
*Attorney for Whitepages, Inc. and Hiya, Inc.*

Dated: December 2, 2024

31

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on December 2, 2024.

I further certify that copies of the foregoing were transmitted to all counsel of record via email and commercial carrier for overnight delivery.

*/s/ Daniel C. Green*

# ADDENDUM 1

## PETITIONERS-DEFENDANTS

| | **Case Name and Civil Action No.** | **Petitioners-Defendants** |
|---|---|---|
| 1. | *Atlas Data Privacy Corp. et al. v. Whitepages, Inc., et al.* 1:24-cv-03998 | Whitepages, Inc. |
| 2. | *Atlas Data Privacy Corp., et al. v. Hiya, Inc., et al.* 1:24-cv-04000 | Hiya, Inc. |
| 3. | *Atlas Data Privacy Corp., et al. v. Acxiom, LLC, et al.* 1:24-cv-04017 | Acxiom, Inc. |
| 4. | *Atlas Data Privacy Corp., et al. v. Commercial Real Estate Exchange, Inc., et al.* 1:24-cv-04073 | Commercial Real Estate Exchange, Inc. |
| 5. | *Atlas Data Privacy Corp., et al v. Carco Group, Inc.,* 1:24-cv-4077 | Carco Group, Inc. Intellicorp Records, Inc. |
| 6. | *Atlas Data Privacy Corp., et al v. 6sense Insights, Inc.,* 1:24-cv-4104 | 6sense Insights, Inc. |
| 7. | *Atlas Data Privacy Corp., et al v. Search Quarry, LLC,* 1:24-cv-4106 | Search Quarry LLC |
| 8. | *Atlas Data Privacy Corp., et al v. Enformion, LLC, et al.* 1:24-cv-04110 | Enformion, LLC Enformion Holdco, Inc. |

| | **Case Name and Civil Action No.** | **Petitioners-Defendants** |
|---|---|---|
| 9. | *Atlas Data Privacy Corp., et al v. Costar Group, Inc., et al.* 1:24-cv-04111 | CoStar Group, Inc. CoStar Realty Information, Inc. |
| 10. | *Atlas Data Privacy Corp., et al v. Oralce International Corporation, et al.* 1:24-cv-04112 | Oracle International Corporation Oracle America, Incorporated Oracle Corporation |
| 11. | *Atlas Data Privacy Corp., et al. v. Red Violet, Inc., et al.* 1:24-cv-04113 | Red Violet, Inc. |
| 12. | *Atlas Data Privacy Corp., et al. v. RE/MAX, LLC, et al.* 1:24-cv-04114 | RE/MAX, LLC |
| 13. | *Atlas Data Privacy Corp., et al. v. Epsilon Data Management, LLC, et al.* 1:24-cv-04168 | Epsilon Data Management, LLC Conversant LLC Citrus Ad International, Inc. |
| 14. | *Atlas Data Privacy Corp., et al. v. Claritas, LLC, et al.* 1:24-cv-04175 | Claritas, LLC |
| 15. | *Atlas Data Privacy Corp., et al v. Data Axle, Inc., et al.* 1:24-cv-04181 | Data Axle, Inc. |
| 16. | *Atlas Data Privacy Corp., et al v. Remine Inc.* 1:24-cv-4182 | Remine Inc. |
| 17. | *Atlas Data Privacy Corp., et al v. Lusha Systems, Inc., et al.* 1:24-cv-04184 | Lusha Systems, Inc. |

| | **Case Name and Civil Action No.** | **Petitioners-Defendants** |
|---|---|---|
| 18. | *Atlas Data Privacy Corp., et al v. Teltech Systems, Inc., et al.* 1:24-cv-04217 | Teltech Systems, Inc. Epic Applications, LLC |
| 19. | *Atlas Data Privacy Corp., et al v. PeopleConnect, Inc., et al.* 1:24-cv-04227 | PeopleConnect, Inc. PeopleConnect Holdings, Inc. Intelius, LLC PeopleConnect Intermediate, LLC |
| 20. | *Atlas Data Privacy Corp., et al. v. Corelogic, Inc., et al.* 1:24-cv-04230 | Corelogic, Inc. |
| 21. | *Atlas Data Privacy Corp., et al. v. Black Knight Technologies, LLC, et al.* 1:24-cv-04233 | Black Knight Technologies, LLC Black Knight, Inc. |
| 22. | *Atlas Data Privacy Corp., et al. v. Choreograph LLC, et al.* 1:24-cv-04271 | Choreograph LLC |
| 23. | *Atlas Data Privacy Corp., et al v. TransUnion LLC, et al.* 1:24-cv-4288 | TransUnion, LLC Neustar, Inc. TransUnion Risk and Alternative Data Solutions, Inc. |
| 24. | *Atlas Data Privacy Corp., et al v. Equifax, Inc., et al.* 1:24-cv-4298 | Equifax, Inc. Kount, Inc. |
| 25. | *Atlas Data Privacy Corp., et al. v. Spokeo Inc., et al.* 1:24-cv-04299 | Spokeo Inc. |
| 26. | *Atlas Data Privacy Corp., et al. v. Telnyx LLC, et al.* 1:24-cv-04354 | Telnyx LLC |

| | **Case Name and Civil Action No.** | **Petitioners-Defendants** |
|---|---|---|
| 27. | *Atlas Data Privacy Corp., et al. v. Wiland, Inc., et al.* <br> 1:24-cv-04442 | Wiland, Inc. |
| 28. | *Atlas Data Privacy Corp., et al. v. AtData, LLC, et al.* <br> 1:24-cv-04447 | AtData, LLC |
| 29. | *Atlas Data Privacy Corp., et al. v. Outside Interactive, Inc., et al.* <br> 1:24-cv-04696 | Outside Interactive, Inc. |
| 30. | *Atlas Data Privacy Corp., et al. v. Valassis Communications, Inc., et al.* <br> 1:24-cv-04770 | Valassis Communications, Inc. <br> Valassis Digital Corp. <br> Vericast Corp. |
| 31. | *Atlas Data Privacy Corp., et al. v. LexisNexis Risk Data Management, LLC, et al.* <br> 1:24-cv-6160 | LexisNexis Risk Data Management, LLC <br> RELX Inc. |

# Addendum 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| BLACKBAUD, INC., et al. | : | NO. 24-3993 |

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| WHITEPAGES, INC., et al. | : | NO. 24-3998 |

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| HIYA, INC., et al. | : | NO. 24-4000 |

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| COMMERCIAL REAL ESTATE | : | NO. 24-4073 |
| EXCHANGE, INC., et al. | : | |

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| CARCO GROUP INC., et al. | : | NO. 24-4077 |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TWILIO INC., et al. | : | NO. 24-4095 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| 6SENSE INSIGHTS, INC., et al. | : | NO. 24-4104 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LIGHTBOX PARENT, L.P., et al. | : | NO. 24-4105 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SEARCH QUARRY, LLC, et al. | : | NO. 24-4106 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ACXIOM, LLC, et al. | : | NO. 24-4107 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| ENFORMION, LLC, et al. | : | NO. 24-4110 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| COSTAR GROUP, INC., et al. | : | NO. 24-4111 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| ORACLE INTERNATIONAL CORPORATION, et al. | : | NO. 24-4112 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| RED VIOLET, INC., et al. | : | NO. 24-4113 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| RE/MAX, LLC, et al. | : | NO. 24-4114 |

ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :
EPSILON DATA MANAGEMENT, LLC, :        NO. 24-4168
et al.                       :

---

ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :
PEOPLE DATA LABS, INC.,      :        NO. 24-4171
et al.                       :

---

ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :
CLARITAS, LLC, et al.        :        NO. 24-4175

---

ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :
DATA AXLE, INC., et al.      :        NO. 24-4181

---

ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.          :
                             :
          v.                 :
                             :
REMINE INC., et al.          :        NO. 24-4182

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LUSHA SYSTEMS, INC, et al. | : | NO. 24-4184 |

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TELTECH SYSTEMS, INC., et al. | : | NO. 24-4217 |

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PEOPLECONNECT, INC., et al. | : | NO. 24-4227 |

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CORELOGIC, INC., et al. | : | NO. 24-4230 |

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BLACK KNIGHT TECHNOLOGIES, LLC, et al. | : | NO. 24-4233 |

_____

```
ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :
THOMSON REUTERS CORPORATION,         :          NO. 24-4269
et al.                               :
_____

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :
CHOREOGRAPH LLC, et al.              :          NO. 24-4271
_____

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :
TRANSUNION, LLC., et al.             :          NO. 24-4288
_____

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :
EQUIFAX INC., et al.                 :          NO. 24-4298
_____

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          V.                         :
                                     :
SPOKEO, INC, et al.                  :          NO. 24-4299
_____
```

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :
TELNYX LLC, et al.              :              NO. 24-4354
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :
MYHERITAGE, LTD., et al.        :              NO. 24-4392
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :
WILAND, INC., et al.            :              NO. 24-4442
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :
ATDATA, LLC, et al.             :              NO. 24-4447
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :
PRECISELY HOLDINGS, LLC,        :              NO. 24-4571
et al.                          :
_____
```

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OUTSIDE INTERACTIVE, INC. | : | NO. 24-4696 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| VALASSIS DIGITAL CORP.,<br>et al. | : | NO. 24-4770 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE LIFETIME VALUE CO. LLC,<br>et al. | : | NO. 24-4850 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST AMERICAN FINANCIAL<br>CORPORATION, et al. | : | NO. 24-5334 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LEXISNEXIS RISK DATA<br>MANAGEMENT, LLC, et al. | : | NO. 24-6160 |

MEMORANDUM

Bartle, J.                                      November  20, 2024

          Plaintiffs in these forty actions allege violations of
a New Jersey statute known as Daniel's Law.[1]

          The actions were originally filed in the Superior
Court in a number of different counties in New Jersey.  The
defendants thereafter removed them to the United States District
for the District of New Jersey under 28 U.S.C. §§ 1441 and 1446
on the ground that subject matter jurisdiction exists either
under 28 U.S.C. § 1332(a) as a result of complete diversity of
citizenship or under the Class Action Fairness Act ("CAFA"), 28
U.S.C. § 1332(d).  Defendants assert that plaintiffs have
collusively attempted to defeat federal jurisdiction.  In two of
the cases, the defendants maintain that plaintiffs' joinder of
non-diverse defendants was fraudulent.  Before the court is the
consolidated motion of the plaintiffs to remand to the state
court under 28 U.S.C. § 1447(c) on the ground that this court
lacks subject matter jurisdiction.[2]

---

1.    Daniel's Law as amended is codified as follows: N.J. Stat.
Ann. §§ 2C:20-31.1, 17:46B-1.1, 19:31-18:1, 46:26A-12, 47:1-17,
47:1A-1.1, 47:1A-5, 47:1B-1, 47:1B-2, 47:1B-3, 47:1B-4, 56:8-
166.1, 56:8-166.3.

2.    All judges in the District of New Jersey have recused.  The
Chief Judge of the United States Court of Appeals for the Third
Circuit reassigned these and all related actions to the
undersigned pursuant to 28 U.S.C. § 292(b).

Daniel's Law provides that New Jersey judges, prosecutors, law enforcement officers, and their immediate families ("covered persons") may request that persons and businesses ("entities") not disclose or make available their home addresses or unlisted telephone numbers.  See, e.g., N.J. Stat. Ann. § 56:8-166.1(d).  These entities are in violation of Daniel's Law if they fail to take down this information within ten business days after receiving a written takedown request. N.J. Stat. Ann. § 56:8-166.1(a).  Daniel's Law provides a private right of action for damages and injunctive relief not only for covered persons but also for their assignees.  N.J. Stat. Ann. § 56:8-166.1(b)-(c).  Under Daniel's Law, "'assignee' means a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for" Daniel's Law violations.  N.J. Stat. Ann. § 56:8-166.1(d).

Plaintiffs in all of the actions are Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan.  Atlas, a Delaware corporation with its principal place of business in New Jersey, has filed suit as the assignee of the Daniel's Law claims of over 19,000 New Jersey covered persons.  The named individual plaintiffs, all current or former law enforcement officers, are

also citizens of New Jersey.  They have brought their own claims

for violations of Daniel's Law.  In each of these forty cases,

there is a named defendant which, like Atlas, is a citizen of

Delaware.

        Upon the filing of the motions to remand, the court

authorized limited discovery on the issue of subject matter

jurisdiction.  E.g., Order, Atlas Data Privacy Corp. v.

Blackbaud, Inc., Civil Action No. 24-3993, (D.N.J. July 24,

2024), ECF No. 53.

                                    I

        Atlas provides a range of services for persons covered

under Daniel's Law who sign up for Atlas's platform ("users").

Before a Daniel's Law claim ever arises, Atlas monitors the

internet for data brokers who are potentially disclosing the

users' home addresses and unlisted telephone numbers.  Atlas

then identifies those data brokers for its users.  Additionally,

Atlas provides each user with an individual e-mail address, from

which the user may request that the data brokers remove his or

her personal information.  To do so, users may send either the

form e-mail that Atlas provides or their own personalized e-

mail.  Atlas then schedules the delivery dates of the takedown

notices.  After takedown notices are sent, Atlas continues to

monitor the recipients to see if they have complied with the

requests.

Upon signing up for Atlas's platform, users agree to Atlas's terms of service ("the terms").  In so doing, users agree that "upon written notice from Atlas," the users assign their "right to bring civil enforcement actions for violations of [their] rights under" Daniel's Law.  The terms further state that, upon receipt of this written notice, a user is "deemed . . . to have irrevocably assigned to [Atlas] all of [the user's] rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of [the user's] rights under" Daniel's law, and "following such assignment, [Atlas] will have the exclusive right to bring such civil enforcement actions . . . ."

Atlas has discretion whether to take an assignment. Atlas may choose to send an assignment confirmation and litigate the Daniel's Law claim itself, or it may choose not to send a confirmation, in which case the users may litigate their own claims.  In either case, the terms provide that Atlas will keep 35% of any recovery from the action with the user receiving the remaining 65%.  Users also pay a subscription fee, whether or not a Daniel's Law claim arises.

In early February 2024, following an alleged failure of the defendants to comply with users' takedown requests, Atlas sent assignment confirmations to over 19,000 of its users.

Shortly thereafter, it filed lawsuits on these assigned claims
in the state court.

                                  II

        Plaintiffs first contend that remand is required
because complete diversity of citizenship has not been satisfied
under 28 U.S.C. § 1332(a).  The statute requires that the
citizenship of each plaintiff must be different from the
citizenship of each defendant.[3]  Exxon Mobil Corp. v. Allapattah
Servs., Inc., 545 U.S. 546, 553-54 (2005); see also Strawbridge
v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806).  A corporation is
deemed a citizen of both its state of incorporation and the
state where it has its principal place of business.  28 U.S.C.
§ 1332(c).  A limited liability company ("LLC") takes on the
citizenship of each of its members.  See Zambelli Fireworks Mfg.
Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).

        It is undisputed that Atlas is a citizen of Delaware,
as is at least one defendant in all these cases.  Thus, at first
glance, it appears that complete diversity is absent under
§ 1332(a).

        The defendants, as the party asserting jurisdiction,
bear the burden of establishing that federal jurisdiction
exists.  Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392,

---

3.  Defendants do not dispute that plaintiffs have satisfied
the required amounts in controversy under § 1332(a).

396 (3d Cir. 2004).  All doubts must be resolved in favor of remand.  Id. at 403.

The defendants first maintain that diversity jurisdiction is lacking because Atlas as an assignee is not a real party in interest and accordingly its citizenship should be disregarded.  The real parties in interest, defendants contend, are the users as assignors.  If defendants are correct, there will be complete diversity since the assignors as well as the individual named plaintiffs are all citizens of New Jersey while no defendant is a citizen of this state.

Rule 17(a) of the Federal Rules of Civil Procedure requires an action to be prosecuted in the name of the real party in interest.  Fed. R. Civ. P. 17(a).  The citizenship of the real party in interest, rather than that of mere nominal parties, governs whether diversity jurisdiction exists.  See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460 (1980).  As explained in Cranpark, Inc. v. Rogers Grp., Inc., "the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law."  821 F.3d 723, 730 (6th Cir. 2016) (quoting Certain Interested Underwriters at Lloyd's London, Eng. v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994); see also Katzovicz v. HIH Logistics, Inc., No. 21-4535, 2021 WL 3038816, at *2 (D.N.J. July 19, 2021).

The plaintiffs rely on the Supreme Court's decision in
Sprint Communications Co., L.P. v. APCC Services Inc., 554 U.S.
269 (2008) to support their position that this court should look
to the citizenship of Atlas as the real party in interest.  In
Sprint, roughly 1,400 payphone operators assigned the entirety
of their small claims against long-distance communications
carriers to "aggregators," which then brought suit in their own
names under the federal Communications Act of 1934 to collect
what was due.  Sprint, 554 U.S. at 271-72.  In the assignments,
the operators transferred to the aggregators the legal title to
their claims.  Id. at 272.  In a separate agreement, the
aggregators promised to remit all proceeds recovered to the
assignor-operators, which would in turn pay a service fee to the
aggregators.  Id.  The Court observed:

> Because litigation is expensive, because the
> evidentiary demands of a single suit are often great,
> and because the resulting monetary recovery is often
> small, many payphone operators assign their . . .
> claims to billing and collection firms called
> 'aggregators' so that, in effect, these aggregators
> can bring suit on their behalf.

Id. at 271-72.

The defendants there argued that only the assignors
had standing to sue.  Id. at 274.  The Supreme Court disagreed.
The Court reiterated the well-established standard for standing:
(1) there must be an injury in fact, that is a concrete and
particularized invasion of a legally protected interest; (2)

there must be causation, that is a fairly traceable causation between the injury in fact and the conduct of defendant; and (3) it is likely that plaintiff's injury will be remedied by the relief plaintiff seeks.  <u>Id.</u> at 273.  The Court held that the aggregators, as the absolute assignees of the claims, had standing under these criteria and could bring suit in the federal court in their own names.  <u>Id.</u> at 285.

It makes no difference, the Court noted, what the assignees do with the money after a victory in court or after settlement.  <u>Id. at 279-81.</u>  For purposes of standing, it does not matter whether the assignees remit the money to the operators, donate it to charity, or build a new corporate headquarters.  Even if the assignees return all of the money to the assignors, the assignees are no different than trustees, guardians, executors, or bankruptcy receivers who seek relief not for themselves but for others.  <u>See id.</u> at 287-88.

The defendants here attempt to distinguish <u>Sprint</u> on the ground that it was a federal question case and that the Supreme Court ruled only on the issue of standing.  The specific question, defendants argue, is whether there is diversity jurisdiction and whether Atlas is a real party in interest.

The Supreme Court in deciding the issue of standing in <u>Sprint</u> relied on <u>Waite v. City of Santa Cruz</u>, 184 U.S. 302 (1902), one of its own precedents and a diversity case.  That

case explained that assignments do not defeat jurisdiction "if
the only objection to the jurisdiction of the Circuit Court is
that the . . . [assignee] was invested with legal title to the
bonds and coupons simply for purposes of collection."[4]  Sprint,
554 U.S. at 283 (quoting Waite, 184 U.S. at 325).

        The Supreme Court in Sprint also surveyed the history
of state court cases allowing assignees to sue in their own
names.  It stated: "During [the 19th] century American law at
the state level became less formalistic through its merger of
law and equity, through statutes more generously permitting an
assignor to pass legal title to an assignee, and through the
adoption of rules that permitted any 'real party in interest' to
bring suit."  Id. at 279 (emphasis added).  The Court took the
trouble to list in an Appendix those state cases which allow
assignees to sue.  See id. at 292-93.  It pointed out that some
specifically referred to the assignee as a real party in
interest.  See, e.g., Allen v. Brown, 44 N.Y. 228, 231, 234
(1870); Jackson v. Hamm, 23 P. 88, 88-89 (Colo. 1890); McDaniel
v. Pressler, 29 P. 209, 210 (Wash. 1892); Cox's Ex'rs v.

---

4.   The Supreme Court in Waite ultimately held there was no
subject matter jurisdiction because the amount in controversy
had not been satisfied by the individual assignments.  184 U.S.
at 328-29.  All parties agree that the requisite amounts in
controversy in the pending cases here have been met under 28
U.S.C. § 1332(a).

Crockett & Co., 22 S.E. 840, 843 (Va. 1895); Chase v. Dodge, 86
N.W. 548, 549 (Wis. 1901).  The Supreme Court found this history
and these precedents among others to be "well nigh conclusive."
Sprint, 554 U.S at 285 (quoting Vt. Agency of Nat. Res. v.
United States ex. rel. Stevens, 529 U.S. 705, 777-78 (2000).[5]

        The Supreme Court treated standing to sue and the real
party in interest as synonymous, at least in the present
context.  See id. at 279-85.  As in Sprint, Atlas has an
absolute assignment of the rights of 19,000 of Atlas's users.
As in Sprint, the assignments of Daniel's Law claims will
facilitate the vindication of the rights originally possessed by
the assignors.  Under the terms of service and upon receipt of
Atlas's assignment confirmations, Atlas was "irrevocably
assigned" the users' rights to "bring a claim []and seek damages
[or] other legal remedies" and has "the exclusive right to bring
. . . civil enforcement actions."  While Atlas intends to return
to the assignors much but not all of what it collects, it does
not matter for jurisdictional purposes what Atlas does with the
money once it is collected.

        Atlas, as the assignee, is the real party in interest
and has standing to sue.  Its citizenship, not that of the

---

5.   The Court noted at the end of its opinion in Sprint that
none of the parties had alleged that the assignments were made
in bad faith.  The Court also noted that the assignments were
made "for ordinary business purposes."  554 U.S. at 292.

assignors, is determinative.  Because Atlas is a citizen of
Delaware, complete diversity of citizenship under § 1332(a) is
lacking in all these cases absent proof of collusion to destroy
diversity or proof of fraudulent joinder.

III

Defendants argue that even if Atlas is a real party in
interest, the assignments and the joinder of Atlas as a
plaintiff were collusive.  If so, diversity of citizenship
exists under 28 U.S.C. § 1332(a).

As background, the court begins with 28 U.S.C. § 1359,
which provides that "[a] district court shall not have
jurisdiction of a civil action in which any party, by assignment
or otherwise, has been improperly or collusively made or joined
to invoke the jurisdiction of such court."  The Supreme Court in
Kramer v. Caribbean Mills, Ltd., 394 U.S. 823 (1969) faced the
question whether an assignment was collusive under § 1359.  The
inquiry is a factual one.  In Kramer, a single Panamanian
corporation assigned its contract claim against a Haitian
corporation to a Texas attorney.  394 U.S. at 824.  The
attorney, who had a "total lack of previous connection with the
matter," paid only $1 as consideration for the assignment and
agreed to remit 95% of any recovery back to the Panamanian
corporation.  Id. at 824, 827.  Without the assignment, there

would be no diversity jurisdiction since both corporations were foreign entities.  See 28 U.S.C. § 1332(a).

The issue of collusion, the Court explained, is a matter of federal law as collusion affects subject matter jurisdiction.  The legality of the assignment under state law is not a relevant consideration for this purpose.  Kramer, 394 U.S. at 829.  The Court found that the assignment was improperly or collusively made within the meaning of § 1359 and as a result, diversity jurisdiction was not made out.  Id. at 828, 830.  It grounded its decision on the assignee's lack of prior connection to the matter, his lack of substantial interest in the litigation, and his candid admission that the assignment was "in substantial part motivated by a desire" to create diversity jurisdiction.  Id. at 827-28.

Here, the situation is the reverse of what the Supreme Court dealt with in Kramer.  The defendants contend that Atlas was collusively joined not to get into federal court but to stay out of federal court.  No statute has been cited which deals with efforts to avoid federal jurisdiction.  Nonetheless, taking their cue from § 1359 and Kramer, courts have treated diversity-destroying assignments and diversity-creating assignments similarly for jurisdictional purposes.  See, e.g., Grassi v. Ciba-Geigy, Ltd., 894 F.2d 181, 186 (5th Cir. 1990); Att'ys Trust v. Videotape Comput. Prods., Inc., 93 F.3d 593, 597-98

(9th Cir. 1996); <u>Gentle v. Lamb-Weston, Inc.</u>, 302 F. Supp. 161, 164-65 (D. Me. 1969).

The Fifth Circuit in <u>Grassi v. Ciba-Geigy, Ltd.</u>, for example, held that a plaintiff was collusively joined to avoid federal jurisdiction.  894 F.2d at 186.  There, a Texas family had filed a collection action in state court against a Swiss corporation.  <u>Id.</u> at 182.  On the same day, the family also assigned 2% of its interest in the claim to a Costa-Rican corporation, which had previously had no involvement in the matter.  <u>Id.</u>  The Costa Rican corporation provided only "investigative and collection work" as consideration for the assignment, and the family controlled the litigation throughout. <u>Id.</u>  Although the addition of the Costa Rican corporation would destroy complete diversity,[6] the Swiss corporation nevertheless removed the case to federal court on the ground that the joinder of the Costa Rican corporation was collusive.  <u>Id.</u>   The Court of Appeals agreed.  It found that the "overriding motive" behind the assignment was a desire to prevent federal diversity jurisdiction and accordingly refused to remand the action to state court.  <u>Id.</u> at 186.  As evidence for its finding, the court pointed to the assignee's lack of prior connection to the

_____

6.   In the Fifth Circuit, "there is no diversity where there are foreign parties on both sides" absent collusion.  <u>Grassi</u>, 894 F.2d at 182.

matter, the lack of meaningful consideration, its minimal 2%
interest in the litigation, and the family-assignor's control of
the litigation.  Id.[7]

As noted, whether a party is collusively joined either
to evoke or destroy federal diversity jurisdiction is a question
of fact for the court.  While the cases consider various factors
as an aid in making this decision, the court must ultimately
decide based on the particular facts before it the underlying
motive or purpose for the joinder or the assignments.  In sum,
the court must ascertain what was really going on.

The facts and circumstances in the pending cases are
quite different from those in any other case called to the
court's attention.  At the outset, the New Jersey Legislature
authorized the assignment of claims to aid in the enforcement of
Daniel's Law.  As counsel readily admitted at oral argument, it
is highly unlikely that even a single member of the General
Assembly or the Senate of New Jersey had in mind the avoidance
of federal diversity jurisdiction when the votes were cast to

_____

7.   Defendants urge the court to consider Attorneys Trust v.
Videotape Computer Products, Inc. because that case lists motive
as only one factor in assessing diversity-destroying
assignments.  93 F.3d 593, 597 (9th Cir. 1996).  That case
involved unusual circumstances, in which the assignees brought
suit in federal court in the first instance and then challenged
jurisdiction only after an adverse judgment was entered.  Id. at
594.  In any event, Attorneys Trust predates Sprint, and it is
not controlling here.

approve assignments.  Nor is there any evidence that Atlas or
its users in making the assignments had in mind a desire to gain
an advantage by having the assigned claims tried in the Superior
Court of New Jersey rather than in the United States District
Court for the District of New Jersey.

Defendants argue that Atlas and the Union representing
police officers in New Jersey colluded to avoid federal
diversity jurisdiction.  While there is evidence that the New
Jersey State Policemen's Benevolent Association representing
some 33,000 active law enforcement officers did work with Atlas
to create assignments from its members, there is no evidence
that the question of federal subject matter jurisdiction played
any role.

In addition, the assignments here are not being made
with respect to a single action or to a limited number of
actions where the assignee has a small monetary interest in the
outcome.  The assignments to Atlas are absolute.  Atlas controls
the litigation.  It has a significant stake in the outcome and
will retain for itself 35% of what it collects.  Furthermore,
there are thousands of assignments and dozens of defendants.
Although Atlas is a citizen of Delaware and New Jersey, it
cannot avoid removal to federal court of any of its many
lawsuits where the defendants are citizens of other states.  In
fact, this court has before it approximately three dozen other

actions originally filed by Atlas as assignee under Daniel's Law in the state court where the defendants are not citizens of Delaware or New Jersey and thus complete diversity exists.  They have been removed and no remand motions are pending.  It is not reasonable to infer that Atlas or its users were engaged in collusive assignments or joinder when there are so many diverse defendants which possess information protected under Daniel's Law.

Defendants in support of their collusion argument point to the short timeframe between the assignment of claims and the filing of the lawsuits.  This factor is of no consequence here.  The amendment to Daniel's Law allowing assignments was enacted on July 20, 2023.  See 2023 N.J. Laws ch. 113.  Atlas and covered persons promptly took advantage of the amendment as was their right once alleged violations of Daniel's Law had occurred.  Atlas obtained absolute assignments and stood fully in the shoes of the assignors.  In return for consideration, the assignors no longer had any claims under Daniel's Law.  Atlas succeeded to the assignors' rights to bring civil actions.  See N.J. Stat. Ann. § 56:8-166.1(d).  Atlas, as any claimant would, then filed lawsuits sooner rather than later.  It was the decision of Atlas, not that of the assignors.  That Atlas and its users moved swiftly to effect the assignments

and Atlas then speedily sued does not create an inference that collusion to avoid federal jurisdiction was afoot.

There are sound legal and business reasons unrelated to federal diversity jurisdiction for the assignments in question and for the joinder of Atlas as a plaintiff.  The court finds there was good faith and no collusion or improper motive or purpose.  Accordingly, defendants have not established the existence of diversity of citizenship under 28 U.S.C. § 1332(a) based on collusion of Atlas, its assignors, or anyone else.

IV

Defendants in two of these forty actions filed notices of removal from the Superior Court of New Jersey on the additional ground that plaintiffs fraudulently joined non-diverse defendants whose presence would destroy complete diversity of citizenship between plaintiffs and the remaining defendants.

The first action is Atlas Data Privacy Corp. v. Thomson Reuters Corp., Civil Action No. 24-4269 (D.N.J. filed Mar. 27, 2024).  There the named defendants are Thomson Reuters Corporation, Thomson Reuters Holdings Inc. ("Holdings"), Thomas Reuters Canada Limited, and Thomson Reuters Applications Inc. ("Applications").  Plaintiff Atlas, a corporation, is a citizen of both Delaware and New Jersey.  The defendants Thomson Reuters Corporation and Thomson Reuters Canada Limited have citizenship

which is diverse from all named plaintiffs.  However, Holdings
is a citizen of Delaware and New York, and Applications is a
citizen of Delaware and Minnesota.  The citizenship of these two
defendants destroys subject matter jurisdiction under 28 U.S.C.
§ 1332(a) unless they are improperly joined.

        The complaint describes Holdings and Applications in
the same way as entities which disclose or redisclose on the
internet or otherwise make available the home addresses and/or
unpublished home telephone numbers of covered persons.  See
Compl. ¶¶ 39, 40.  The complaint thereafter alleges that
"Defendants offer and engage in the disclosure of data and
information through one or more websites or applications, or
otherwise in New Jersey, and to businesses and individuals who
operate or reside in New Jersey.  Those websites include:
thomsonreuters.com."  See Compl. ¶ 42.

        Accompanying the notice of removal was a Declaration
of Heather O'Hagan, the "Head of Tax, Canada & LatAm at Thomson
Reuters."  She makes the declaration on the "personal knowledge
of Thomson Reuters Corporation, and its subsidiaries, as well as
[her] review of Thomson Reuters business records and the
Complaint in this case."  In her declaration, she simply states
that the website "thomsonreuters.com" is "not owned by or
registered to [Holdings] or [Applications]."

The second action is <u>Atlas Data Privacy Corp. v.</u>
<u>MyHeritage Ltd.</u>, Civil Action No. 24-4392 (D.N.J. filed Mar. 28,
2024).  There the named defendants are MyHeritage Ltd. and
MyHeritage (USA), Inc.  MyHeritage Ltd. is incorporated and has
its principal place of business in Israel.  MyHeritage (USA),
like plaintiff Atlas, is incorporated in Delaware.  If
MyHeritage (USA) is a proper defendant, complete diversity is
absent.  The complaint avers identical claims against both
defendants.  Each is characterized as "an entity that discloses
or re-discloses on the Internet or otherwise makes available the
home addresses and/or unpublished home telephone numbers of
covered persons."  <u>See</u> Compl. ¶¶ 36, 37.  The complaint further
alleges: "Defendants offer and engage in the disclosure of data
and information through one or more websites or applications, or
otherwise in New Jersey, and to businesses and individuals who
operate or reside in New Jersey.  Those websites include:
myheritage.com."  <u>See</u> Compl. ¶ 39.

In the <u>MyHeritage</u> action, Michael Stangel, the General
Manager for MyHeritage (USA), filed a declaration based on his
personal knowledge and his review and knowledge of the business
records of MyHeritage (USA).  The declaration states that
MyHeritage (USA) does not "own, control, or otherwise operate
www.myheritage.com" and does not have access to its e-mail
inbox.  It does not have a role in deciding what information is

available on www.myheritage.com and cannot remove any
information on that website.  It does not have access to or
otherwise interact with www.myheritage.com.  MyHeritage (USA)
has its own website, www.geni.com, which is not referenced in
the complaint.

Our Court of Appeals in Batoff v. State Farm Insurance
Co., has explained that joinder is fraudulent "where there is no
reasonable basis in fact or colorable ground supporting the
claim against the joined defendant, or no real intention in good
faith to prosecute the action against the defendant[] or seek a
joint judgment" 977 F.2d 848, 851 (3d Cir. 1992)(quoting Boyer
v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).  The
court must not treat the issue of fraudulent joinder as it would
a motion to dismiss for failure to state a claim under Rule
12(b)(6) of the Federal Rules of Civil Procedure.  Whether a
plaintiff's claim against a defendant lacks merit as a matter of
law is not the relevant consideration.  Instead, the issue is
whether the claim is "wholly insubstantial and frivolous."
Batoff, 977 F.2d at 852.  The heavy burden of persuasion rests
on the party asserting fraudulent joinder.  Id. at 851.

The court must accept all well-pleaded facts as true.
Id. at 851-52.  Nonetheless, it may venture outside the four
corners of the pleading, not to decide the case on the merits,
but to determine if fraudulent joinder exists.  In Abels v.

State Farm Fire & Casualty Co., our Court of Appeals explained
that a court "must look beyond the face of the complaint for
indicia of fraudulent joinder."  770 F.2d 26, 29 (1985).
Likewise, in Boyer v. Snap-On Tools Corp., the Court cited with
approval Smoot v. Chicago, Rock Island & Pacific Railroad Co.,
378 F.2d 879 (10th Cir. 1967).  Boyer, 913 F.2d at 112.  In
Smoot, the court looked beyond the complaint and accepted an
affidavit of a non-diverse defendant alleged to have been a
railroad employee culpable for a fatal accident at a railroad
crossing.  378 F.2d at 882.  The affidavit declared he had
discontinued his employment with the railroad fifteen months
before the accident.  Id. at 881.  Smoot held that he had been
fraudulently joined.  Id. at 882.

More recently, our Court of Appeals in In Re Briscoe
reaffirmed the principle that a court may look beyond the
pleading to decide the issue of fraudulent joinder.  448 F.3d
201, 219 (3d Cir. 2006).  There the specific issue was whether
the statute of limitations had run.  The court opined, "we see
no reason to preclude a district court from a limited
consideration of reliable evidence that the defendant may
proffer to support the removal."  Id. at 220.

In the Reuters action, the declaration is quite
narrow.  It merely states that the website thomsonreuters.com is
not "owned or registered" to Holdings or Applications.  This is

a far cry from total disassociation from that website.  The
party asserting fraudulent joinder, as noted above, has the
burden of proof.  After review of the allegations in the
complaint and the relevant facts presented outside the
complaint, defendants Holdings and Applications have not met
their burden.  Their position that they were fraudulently joined
in Civil Action No. 24-4269 fails.  Thus, subject matter
jurisdiction under § 1332(a) is lacking as Holdings and
Applications, like Atlas, are citizens of Delaware.

The situation is far different in MyHeritage.  In
contrast to the declaration in Reuters, the declaration in
MyHeritage is all-encompassing.  It states that MyHeritage (USA)
does not own, control, or otherwise operate www.myheritage.com,
the website referenced in the complaint.  MyHeritage (USA) has
no role in deciding what information is available on that
website and has no ability to remove information.  Plaintiffs
had the opportunity to take relevant discovery on subject matter
jurisdiction pursuant to court order but did not do so on the
issue of fraudulent joinder.  See Order, Atlas Data Privacy
Corp. v. MyHeritage LTD, Civil Action No. 24-4392 (D.N.J. July
24, 2024), ECF No. 34.  The declaration stands uncontested.

The undisputed facts before the court establish that
plaintiffs have no colorable claim against MyHeritage (USA).
The claim is wholly unsubstantiated and frivolous.  MyHeritage

(USA) has no involvement whatsoever with the website in issue. It is a total stranger to any alleged violation of Daniel's Law. The situation here is quite similar to that in Smoot, where the non-diverse defendant was no longer employed by the railroad at the time of the accident and therefore could not possibly have been found liable.

MyHeritage (USA) has established that it was fraudulently joined and will be dismissed. There is complete diversity under 28 U.S.C. § 1332(a) in Civil Action No. 24-4392.

V

Defendants urge that the jurisdictional requirements have been met for a class action under the Class Action Fairness Act, ("CAFA") 28 U.S.C. § 1332(d)(1)-(10). In contrast to § 1332(a) but consistent with Article III of the Constitution, CAFA requires only minimal diversity. See 28 U.S.C. § 1332(d)(2); State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 531 (1967). This element is satisfied, as it is here, if any member of the class is a citizen of a state different from any defendant. For CAFA class action status, there must also be a total amount in controversy in excess of $5,000,000. No party raises a challenge on this basis.

The only contested issue is whether these actions meet the definition of a "class action" under § 1332(d)(1)(B). Under this subsection, "the term 'class action' means any civil action

filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Defendants contend that these actions are "class actions in disguise" or "alternatively that they were filed under Daniel's Law which is similar to Rule 23 in every relevant respect."

First, these are not class actions in disguise.  It is pellucid that none of them was brought either explicitly, implicitly, or obliquely under Rule 4:32-1 of the New Jersey Rules of Court, which contains the requirements for maintaining a class action.  The New Jersey Rule is in all material respect similar to Rule 23.  Nowhere do the plaintiffs in the words of the Rule or otherwise purport to "sue or be sued as representative parties on behalf of" any other persons.  See N.J. Ct. R. 4:32-1(a).  Plaintiffs are acting on behalf of themselves.  As noted, the assignments that Atlas has obtained from its users are absolute.  Atlas was "irrevocably assigned" the users' rights "to bring a claim []and seek damages [or] other legal remedies" and has "the exclusive right to bring such civil enforcement actions."  Under Daniel's Law, an assignee is a person or entity who has been assigned the covered person's right to bring a civil action.  See N.J. Stat. Ann. § 56:18-166.1(d).  As explained in Sprint, what Atlas as the assignee

does with what it may collect is of no concern to the court in
these actions.  Sprint, 554 U.S. at 279-81.  In a class action,
of course, it is of great concern what happens to what the class
representative obtains on behalf of the class.  The court in
such actions must review the adequacy of any settlement and take
steps to ensure the proper distribution of any judgment or
settlement.  These actions as pleaded here bear no resemblance
to a class action under Rule 4:32-1 of the New Jersey Rules of
Court.

Defendants argue in the alternative that Daniel's Law
is a statute similar to Rule 23.  This argument seems a little
like trying to fit a round peg into a square hole.  To begin,
there is no representative party provision.  Under Daniel's Law,
covered persons or assignees sue in their own names and not on
behalf of anyone else.  Daniel's Law treats an absolute assignee
such as Atlas as a real party in interest.  The claims of Atlas
belong to Atlas and Atlas alone.  Assignees are not acting on
behalf of the assignors.

Moreover, Daniel's Law contains no numerosity
threshold.  This is a sine qua non for class actions of all
stripes.  Daniel's Law clearly permits a lawsuit by a single
covered person or by an assignee of a single covered person.

The court need not make a detailed comparison between
Daniel's Law and the other characteristics for a class action

such as commonality, typically, adequacy, and notice.  In short,
Daniel's Law contains no such provisions.  Defendants' entire
argument rests on the premise that the assignments were partial
and consequently Atlas is representing the interests of
assignors in these lawsuits.  This is simply incorrect.  As
explained previously, these assignments are absolute and Atlas
succeeds absolutely to the rights of the covered persons to
bring suit.

Our Court of Appeals addressed the class action
provision of CAFA in Erie Insurance Exchange v. Erie Indemnity
Co., 722 F.3d 154 (3d Cir. 2013) and Erie Insurance Exchange by
Stephenson v. Erie Indemnity Co., 68 F.4th 815 (3d Cir. 2023)
("Erie Insurance I" and "Erie Insurance II").  An unincorporated
insurance exchange brought suit in its own name for breach of
fiduciary duty, purporting to seek relief "on behalf of its
members."  Erie Insurance I, 722 F.3d at 157.  The exchange
brought its suit pursuant to two Pennsylvania procedural rules,
both of which addressed primarily whether the exchange could
bring its suit under its own name or under the name of its
members.  Erie Insurance II, 68 F.4th at 818; see also Pa. R.R.
Civ. P. 2152, 2177.

The court rejected the defendant's position that the
case was "in substance a class action insofar as [the exchange
was] a stand-in for a class of" its members because the state

procedural rules under which the actions were brought
"contain[ed] none of the defining characteristics of Rule 23."
Erie Insurance I, 722 F.3d at 158-59.  The court noted that the
rules contained no class certification mechanisms as in Rule
23(c)(1), no numerosity or commonality requirements as in Rule
23(a)-(b), no provisions addressing notice that must be given to
"class members" as in Rule 23(c)(2), or any provisions for
opting out or appointing a class representative.  Id. at 159.

      The circumstances here are similar to the
circumstances in both Erie cases.  Again, these forty actions
bear no similarity to class actions under CAFA.

      Accordingly, this court does not have subject matter
jurisdiction under the class action provisions of CAFA, 28
U.S.C. § 1332(d)(1)-(10).

VI

      Finally, defendants assert that subject matter
jurisdiction exists, regardless of the citizenship of Atlas,
under the "mass action" provisions of the Class Action Fairness
Act, 28 U.S.C. § 1332(d)(11).  As with a CAFA class action, only
minimal diversity is required.  Jurisdiction exists if any
plaintiff has different citizenship from any defendant.  It is
undisputed that minimal diversity is satisfied in all pending
cases.

A mass action is a civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that plaintiffs' claims involve common questions of law or fact. . . ."  28 U.S.C. § 1332(d)(11)(B)(i). The aggregate amount in controversy must be at least $5,000,000, and the claims of each plaintiff must exceed $75,000 exclusive of interest and costs.  Id.  The parties are in accord that the requisite amounts in controversy have been satisfied.  Instead, plaintiffs contend that mass action status fails because there are not 100 named plaintiffs in any of the complaints.  Only Atlas and the six individuals are listed.

The plaintiffs cite the decision of the Supreme Court in Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161 (2014) as controlling.  In Hood, the State of Mississippi brought an action in the state court in which it claimed that defendants, manufacturers and sellers of liquid crystal display panels, had formed a cartel to restrict competition and raise prices.  571 U.S. at 166.  The State, the only named plaintiff, sought restitution and injunctive relief on behalf of itself and its citizens based on injuries they all suffered as purchasers. Id.  The citizens who were harmed were not named in the complaint.

The defendants removed the action to the federal court on the ground that it was either a class action or mass action

under CAFA.  Id. at 166.  The Supreme Court had before it the
question whether a mass action included lawsuits "brought by
fewer than 100 named plaintiffs."  Id. 168-69.  The Court held
unanimously that a mass action cannot exist with fewer than 100
named plaintiffs even if there were 100 or more unnamed persons
who were real parties in interest as beneficiaries.  Id. at 175.
The Court reached its conclusion based solely on its
construction of CAFA.  It reasoned that CAFA explicitly requires
"100 or more persons" in a mass action, not "100 or more named
or unnamed real parties in interest."  Id. at 169.  The Supreme
Court read "100 or more persons" to mean 100 or more plaintiffs.
See id. at 176.  A plaintiff is a party who brings a civil suit.
Id. at 162.

        The Court referenced that CAFA provides that the term
"class members" means "the persons (named and unnamed) who fall
within the definition of the proposed or certified class."  Id.
at 169; see also 28 U.S.C. § 1332(d)(1)(D).  In contrast, there
is no reference to unnamed persons in a mass action.  The Court
observed that if Congress had wanted to include unnamed persons
in the calculus, it knows how to say so.  Hood, 571 U.S. at 169.
The Court also rejected a real party in interest analysis.
While relevant in other contexts, it is not germane to deciding
whether a lawsuit constitutes a mass action.  Id. at 174, 176.

The defendants here emphasize that <u>Hood</u> was a <u>parens patriae</u> action where it was not possible to determine the identity of the citizens of Mississippi who were harmed.  They argue that the pending cases under Daniel's Law are different because the 19,000 unnamed covered persons are actually known.  Defendants point to a part of the Supreme Court's opinion which discusses how difficult it would be in that case to identify "a majority of plaintiffs" to meet the requirements for the transfer of the action to another court under § 1332(d)(11)(C)(i) if they were not named in the complaint.  <u>See</u> <u>id.</u> at 173.  This problem, defendants contend, does not exist here.  While the Supreme Court does talk about the problem of applying the transfer provision if unknown citizens of Mississippi are deemed plaintiffs, its discussion of this subject is not critical to its holding.  It simply refers to this difficulty as <u>reinforcing</u> – not as essential to – its construction of the mass action provision of CAFA.  <u>See</u> <u>id.</u>

Even if the 19,000 unnamed covered persons are real parties in interest, this fact does not satisfy the criteria for a mass action under CAFA.  Nor is the difference between a <u>parens patriae</u> action in <u>Hood</u> and the claims here relevant.  There is nothing in CAFA providing that the number of named plaintiffs may vary depending on the nature of the underlying claims.  The defendants urge this court to construe CAFA

broadly.  No policy concern or rule of construction, however,
can undermine the text of the statute as construed by the
Supreme Court.  See Erie Ins. Exch. by Stephenson v. Erie Indem.
Co., 68 F.4th 815, 821 (3d Cir. 2023).  The fact that Congress
loosened the complete diversity requirement for class actions
and mass actions does not mean that other requirements imposed
by Congress should be ignored.

In sum, Hood holds that CAFA requires at least 100
named plaintiffs for any mass action, not simply 100 or more
persons who are real parties in interest.  The Supreme Court
could not have been clearer.  Since there are not a hundred
named plaintiffs in any of the complaints, defendants' argument
that subject matter jurisdiction exists because these lawsuits
are mass actions under 28 U.S.C. § 1332(d)(11) is without merit.

VII

The plaintiffs' motions to remand these actions will
be granted except for Atlas Data Privacy Corp. v. MyHeritage
Ltd., Civil Action No. 24-4392, as to which the motion to remand
will be denied.  The defendant MyHeritage (USA) Ltd. in that
action will be dismissed because it is fraudulently joined.

The court concludes that: (1) Atlas is a real party in
interest; (2) the assignments to and joinder of Atlas are not
collusive; (3) there is no fraudulent joinder except as noted
above; (4) complete diversity of citizenship is lacking under 28

U.S.C. § 1332(a) except for the one action noted above; and (5)

subject matter jurisdiction is absent under the class action and

mass action provisions of the Class Action Fairness Act, 28

U.S.C. § 1332(d).


BY THE COURT:


/s/ Harvey Bartle III
                                    J.